UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JOSEPH GRECO, JULES BRODSKY, TODD J. CHRISTENSON, WILLIAM DICKIE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>JERRAL "JERRY" WAYNE JONES, NATIONAL FOOTBALL LEAGUE, DALLAS COWBOYS FOOTBALL CLUB, LTD., JWJ CORPORATION, COWBOYS STADIUM, L.P., COWBOYS STADIUM G.P., LLC, and BLUE & SILVER, INC.,<br><br>Defendants. | CASE NO. 3:13-CV-1005-M |

## MEMORANDUM OPINION & ORDER

Before the Court are the Motion to Dismiss of the Cowboys Defendants (Jerral Jones, Dallas Cowboys Football Club, Ltd., JWJ Corporation, Cowboys Stadium G.P., LLC, Cowboys Stadium, L.P., and Blue & Silver, Inc.) [Dkt. No. 4] and the Motion to Dismiss of Defendant National Football League [Dkt. No. 6]. For the following reasons, the Cowboys Defendants' Motion is **GRANTED** and the NFL's Motion is **GRANTED in part**.

**I.   Background**.

This action was filed in state court and removed to this Court. The Court denied Plaintiffs' Motion to Remand on January 16, 2014.

This action arises from the same facts alleged in an earlier-filed parallel action, *Simms v. Jones*, *et al.* (11-CV-248-M), in which the plaintiffs are represented by the same counsel who represent the Plaintiffs in this case. Plaintiffs, ticketholders for Super Bowl XLV, held at

Cowboys Stadium on February 6, 2011, assert the same claims and plead allegations nearly identical to those pleaded by the plaintiffs in *Simms*.  Specifically, Plaintiffs allege that Defendants misrepresented and failed to disclose to them the actual condition of their game day seating, culminating in some Plaintiffs being relocated to other seats within the stadium, some being delayed in access to their seats, some being denied access to stadium seating altogether, and some receiving seats with obstructed views.

Although the two actions are similar, they were filed separately and are brought by different plaintiffs.  The Court's prior rulings in the *Simms* action, therefore, are not binding on these Plaintiffs, but the Court's reasoning in *Simms* is germane to its decision in this case.

## II.   Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The pleading standard Rule 8 announces does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (citations omitted).  While a court must accept a plaintiff's factual allegations as true, it is not bound to accept as true "a legal conclusion couched as a factual allegation."  *Id.* at 677-79 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  *Twombly*, 550 U.S. at 570.  Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the pleader is plausibly entitled to relief.  Fed. R. Civ. P. 8(a)(2); *Iqbal*, 556 U.S. at 678-80.

Rule 9(b) "is an exception to Rule 8(a)'s simplified pleading" and requires a party

"alleging fraud or mistake . . . [to] state with particularity the circumstances constituting fraud or mistake." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (internal citation omitted).  The Fifth Circuit has applied the heightened pleading requirement of Rule 9(b) to both fraud and negligent misrepresentation claims when, as here, they "are based on the same alleged facts." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).  The Fifth Circuit has interpreted Rule 9(b) to require, at a minimum, that a plaintiff set forth the "who, what, when, where, and how" of the alleged fraud.  *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (internal citation and quotation marks omitted).  However, the Fifth Circuit has also stated that the "time, place, contents, and identity standard is not a straitjacket for Rule 9(b)," concluding that Rule 9(b) is context-specific and flexible.  *United States ex rel. Grubbs*, 565 F.3d at 185.

### III.   Plaintiffs' Claims for Breach of Contract Against the Cowboys Defendants.

As was the case in *Simms*, Plaintiffs' breach of contract claims arise out of the purchase of a game ticket for the 2011 Super Bowl.  That ticket, however, is a contract only between the NFL and a ticket purchaser (or a purchaser's assignee).  Like the *Simms* plaintiffs, Plaintiffs here attempt to plead a contract between the Plaintiffs and the Cowboys Defendants, alleging that "the Cowboys Defendants received five percent (5%) of the available Super Bowl game tickets from the NFL for resale to fans" and "[o]n information and belief" some of those were sold to "one or more Plaintiffs." Compl. ¶ 4.13.  Accepting Plaintiffs' version of the facts as true, the fact that the Cowboys Defendants sold tickets issued by the NFL to "one or more Plaintiffs" does not alter the nature of the contract, which is between the NFL and the Plaintiffs.  Plaintiffs have not plausibly alleged that the Cowboys Defendants were anything more than third-party sellers of tickets to an NFL event and, therefore, have not pleaded the existence of a contract between the

Cowboys Defendants and any Plaintiff.

In *Simms*, the Court dismissed with prejudice the plaintiffs' breach of contract claims against the Cowboys Defendants, because the Cowboys Defendants had no contract with the Plaintiffs. Plaintiffs here have presented the Court with no reason why their allegations compel a different result. Indeed, they premise liability on the same allegations in *Simms*. The only different argument Plaintiffs raise to establish contract liability for the Cowboys Defendants, which is in their Response, is that discovery in *Simms* shows that Cowboys Stadium, L.P. had a contractual responsibility to construct the temporary seating, the lack of completion of which led to the unavailability of ticketed seats for some Plaintiffs. However, such facts, even if true, do not establish a contract between any of the Cowboys Defendants and any Plaintiff. Plaintiffs do not plead in their Complaint that this fact creates a contract with Plaintiffs, nor do they argue in their Response that they were parties to, or beneficiaries of, any contract(s) to construct the temporary seats. Plaintiffs' breach of contract claims against the Cowboys Defendants is implausible, and is **DISMISSED with prejudice**.

At this stage in the litigation, the breach of contract claims against the NFL cannot be determined as a matter of law. Thus, the NFL's Motion to Dismiss is **DENIED** to the extent that the NFL moves to dismiss the breach of contract claims against it.[1]

**IV.   Plaintiffs' Fraudulent Inducement Claims**.

As in *Simms*, Plaintiffs also plead "fraudulent inducement" claims based on representations allegedly made by Defendants on the face of the game tickets.

---

[1] Although the NFL does not explicitly move for dismissal of Plaintiffs' breach of contract claims against it, it incorporates by reference the dismissal arguments it raised in *Simms*, which included that argument.

Because Plaintiffs' contract was only with the NFL, any claim that Plaintiffs were fraudulently induced to purchase such tickets can be made only against the NFL.[2] The Court, therefore, **DISMISSES with prejudice** Plaintiffs' fraudulent inducement claims against the Cowboys Defendants.

To sustain fraudulent inducement claims under Texas law, Plaintiffs must show that: (1) the NFL made a false material misrepresentation; (2) that it knew was false when made, or made it recklessly without knowledge of its truth; (3) while intending to induce Plaintiffs to act upon the representation; and (4) Plaintiffs actually and justifiably relied upon the representation, and thereby suffered injury. *Simms v. Jones*, 879 F. Supp. 2d 595, 600-01 (N.D. Tex. 2012). The independent injury rule does not bar Plaintiffs' fraudulent inducement claims. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46-47 (Tex. 1998)

---

[2] While privity of contract between a plaintiff and a defendant is not required to prove the intent to induce reliance element of a fraud claim, *see Mid States Dev., LLC v. Fidelity Nat'l Title Ins. Co., Inc.*, No. 3:99-CV-1966, 2001 WL 1172215, at *3 (N.D. Tex. Sept. 28, 2001) (Lynn, J.), the Court concludes that all of Plaintiffs' fraud claims against the Cowboys Defendants must be dismissed with prejudice. This is so because the Court concludes that the only plausible fraud claims are those based solely on omissions regarding obstructed views "made" on the face of the tickets when issued by the NFL, in violation of the NFL's own guidelines requiring obstructed views to be disclosed to purchasers. *See infra* at 6-8; *see also* Compl. ¶ 4.1 ("This case is about the NFL's purposeful sale of Super Bowl tickets for seats they knew, or at the very least should have known . . . were substandard in that they afforded obstructed views."); *id.* ¶ 4.15 ("None of the tickets for Super Bowl XLV purchased and/or acquired by Plaintiffs contain any reference alerting the purchaser to the seats . . . having obstructed views of the field, stadium, or Video Replay Board. The NFL failed to provide this material information to Plaintiffs."); *id.* ¶ 6.2(d) ("By omitting any reference to obstructed views, consistent with NFL guidelines requiring that seats with obstructed views be disclosed to purchasers, Defendants affirmatively represented that the views of the game and the Video Replay Board from the assigned seats purchased by ticket holders would not be obstructed."). Thus, as the Court found in *Simms*, the Court concludes that Plaintiffs' injuries are pleaded in connection with the contractual relationship existing solely between the NFL and themselves, and that the Cowboys Defendants owed no duty of disclosure to Plaintiffs relating to seat obstructions. Plaintiffs neither plead additional allegations, nor raise additional argument not made by the *Simms* plaintiffs that would compel sustaining these claims against the Cowboys Defendants. Further, like the NFL, the Cowboys Defendants would have had nothing to gain by deceiving Plaintiffs into purchasing tickets for seats that would be unavailable on game day, or by inducing Plaintiffs to attend Super Bowl XLV, by failing to disclose problems associated with the completion of temporary seating. *See infra* at 7-9.

("[T]ort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract.").

Plaintiffs allege that the false representations were on the tickets, which stated that Plaintiffs would be able to enjoy pregame festivities beginning at 1:00 p.m., and would have assigned seats for the game, to begin at 5:00 p.m. Plaintiffs also allege that by "omitting any reference to obstructed views, consistent with NFL guidelines requiring seats with obstructed views be disclosed to purchasers, Defendants affirmatively represented that the views of the game and the Video Replay Board . . . would not be obstructed."[3] Finally, Plaintiffs allege that Defendants knew these representations were false when made, or made these representations recklessly and without knowledge of their truth, that Defendants intended to induce Plaintiffs to buy the tickets based on this information, and that each of the Plaintiffs relied on those representations to their detriment. *See, e.g.*, Compl. ¶¶ 6.2-6.8.

---

[3] To the extent that the NFL is moving to dismiss the fraudulent inducement claims of the Obstructed View Plaintiffs—*i.e.*, Plaintiffs whose tickets did not disclose obstructed views at the time of sale—the Court rejects this argument for the reasons given in *Simms*. *Simms v. Jones*, 879 F. Supp. 2d at 600-02. Implicit in that holding is the Court's conclusion that Plaintiffs sufficiently pleaded that the NFL violated a duty to disclose to the Obstructed View Plaintiffs that their tickets had obstructed views, rendering the NFL's silence equivalent to a false representation. *See generally Hidden Values, Inc. v. Wade*, No. 11-CV-1917, 2012 WL 1836087, at *9 (N.D. Tex. May 18, 2012) (Lindsay, J.) ("The court . . . concludes that under Texas law, a duty to disclose can exist absent a fiduciary relationship when a party does not have an equal opportunity to discover material information withheld.").

Plaintiffs' obstructed view "fraudulent inducement" claims are in effect claims for "fraudulent concealment," but will be referred to as claims for "fraudulent inducement by omission" to ensure consistency with the allegations of Plaintiffs' Complaint and the Court's decision in *Simms*. *See Smith v. BCE Inc.*, No. 4-CV-303, 2005 WL 3454104, at *9 (W.D. Tex. Nov. 29, 2005) ("[F]raud by [omission] requires proof of all the elements of fraud by affirmative misrepresentation . . . with the exception that the misrepresentation element can be proven by [omission] of a material fact in light of a duty to speak.") (citing *United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 566 (5th Cir. 2005)) (internal quotation marks omitted); *Alcan Aluminum Corp. v. BASF Corp.*, 133 F. Supp. 2d 482, 498 (N.D. Tex. 2001) (Lindsay, J.). The Court finds that Plaintiffs have sufficiently pleaded the Obstructed View Plaintiffs' inability to discover this withheld material information. *See, e.g.*, Compl. ¶ 4.15.

For the same reasons given in *Simms*, the Court finds that Plaintiffs have not stated a claim for fraudulent inducement for the "Displaced" and "Relocated/Delayed Plaintiffs." Plaintiffs' allegations as to the unavailability of temporary seats do not support a plausible inference of fraudulent inducement. Plaintiffs' argument in their Response (which was not pleaded in their Complaint) that the NFL withheld information regarding construction of temporary seating from NFL owners when they voted on bids to select a host region, does not plausibly speak to the NFL's knowledge or intent not to provide designated temporary seating at the time the tickets were issued for sale to the public. That it may be "NFL policy that a host team and committee can deviate from the bid only with acceptance by the NFL of those deviations," Pls.' Resp. to NFL's Mot. to Dismiss at 9, does not create a plausible basis for a fraudulent inducement claim on seat availability.

As in *Simms*, Plaintiffs do not state a plausible claim that tickets were sold with the intention not to complete construction of the temporary seating. *See Kevin M. Ehringer Enters., Inc. v. McData Servs. Corp.*, 646 F.3d 321, 325 (5th Cir. 2011) ("To be actionable as fraudulent inducement, a breach must be coupled with a showing that the promisor never intended to perform under the contract."). Plaintiffs do not plausibly allege that their tickets were sold after Defendants knew or believed that the seats would not be completed. As the Court held in *Simms*, the NFL had nothing to gain by tricking fans into purchasing tickets for seats that it did not believe would be available. *Simms*, 879 F. Supp. 2d at 600. Plaintiffs allege that the Cowboys Defendants' original plan—alleged to have been subsequently assumed by the NFL—called for the construction of temporary seats, that a building permit was obtained, that many of the temporary seats were in fact installed, and that work on the temporary seating continued even on game day. Compl. ¶¶ 4.4, 4.19, 4.22, 4.36-4.38, 4.41-4.42, 4.47. Without alleging plausible and

non-conclusory facts supporting the allegation that the NFL did not intend to have temporary seats constructed for which tickets were sold, Plaintiffs cannot recover on a theory of fraudulent inducement as to temporary seats that were not completed and approved by game day. *See Formosa Plastics Corp.*, 960 S.W.2d at 48 ("The mere failure to perform a contract is not evidence of fraud. . . . A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made."); *cf. In re Perry*, 423 B.R. 215, 284 (Bankr. S.D. Tex. 2010) ("In Texas, partial performance of an agreement refutes an assertion that there was no intent to perform.").

For these reasons, Plaintiffs' claims for fraudulent inducement based on the installation of temporary seating are **DISMISSED**. The Court concludes that permitting Plaintiffs to amend would be futile and, therefore, **DISMISSES** these claims **with prejudice**. Those Plaintiffs who had tickets with obstructed views, who claim (1) they were unaware of those obstructions prior to purchase, (2) that non-obstruction was a material fact on which they relied, and (3) that the NFL knew the seats had obstructed views, have stated a claim for fraudulent inducement as it relates to the omission of obstruction information from their tickets. *See also Simms*, 879 F. Supp. 2d at 602. Thus, the NFL's Motion to Dismiss is **DENIED** to the extent that the NFL is moving to dismiss the fraudulent inducement by omission claims brought against it by the Obstructed View Plaintiffs.

## V. Plaintiffs' Fraudulent Concealment Claims.

Plaintiffs assert fraudulent concealment claims against both the Cowboys Defendants and the NFL. Plaintiffs cannot maintain fraudulent concealment claims against the Cowboys Defendants for the same reasons that they cannot maintain fraudulent inducement claims against

the Cowboys Defendants. *See supra* 5-8, n.2. The Court, therefore, **DISMISSES with prejudice** Plaintiffs' fraudulent concealment claims against the Cowboys Defendants.

The Court in *Simms* ruled that the plaintiffs' fraudulent concealment claims against the NFL were foreclosed by the independent injury rule. Here, too, Plaintiffs cannot state a claim for fraudulent concealment against the NFL.[4]

For the same reasons discussed as to fraudulent inducement, the Court finds that Plaintiffs cannot state a plausible claim that the NFL deceived individuals into purchasing tickets with no intention of providing them the purchased seats. *See supra* at 7-8. Thus, to the extent that Plaintiffs' fraudulent concealment claims concerning installation of temporary seating are based on partial disclosures or other concealments allegedly intended to induce the purchase of a game ticket, the Court **DISMISSES** these claims **with prejudice** for the same reasons it did so under Plaintiffs' fraudulent inducement theory.

Plaintiffs' remaining fraudulent concealment claims are based on the NFL allegedly inducing Plaintiffs to follow through with their plans to attend Super Bowl XLV, by failing to disclose the problems associated with the completion of temporary seating. Plaintiffs plead that the NFL intended this conduct to "maximize revenue and attendance at the Super Bowl." Compl. ¶ 7.5. Even assuming that a duty to disclose existed on these facts, it is implausible that the NFL would intentionally mislead fans to attend Super Bowl XLV when they would have no seats or undesirable seats different from what they purchased. Further, to the extent that

---

[4] As in *Simms*, Plaintiffs' fraudulent concealment claims premised on the NFL's failure to disclose obstructed views on the face of the tickets are the same claims as their fraudulent inducement by omission claims. To the extent that Plaintiffs base their fraudulent concealment claims on the NFL's alleged post-sale concealment of facts relating to obstructed views, such claims fail for the same reasons Plaintiffs' analogous fraudulent concealment claims fail. The Court's dismissal of the *Simms* plaintiffs' fraudulent concealment claims, and the Court's dismissal of Plaintiffs' fraudulent concealment claims in this case, were and are not a dismissal of the fraudulent inducement by omission claims held by the Obstructed View plaintiffs in *Simms* or the Obstructed View Plaintiffs in this action.

Plaintiffs argue that the NFL concealed its post-sale knowledge of the problems associated with temporary seating "in order to avoid a public relations nightmare," *see* Compl. ¶ 7.5, the public relations nightmare was likely, if not certain, to occur when individual ticketholders arrived at the game but were either not seated where their tickets promised or were declined seating altogether. Because it is not plausible that the NFL would have had any reason to conceal the true facts, Plaintiffs have not pleaded a claim for fraudulent concealment.

For these reasons, Plaintiffs' claims for fraudulent concealment are **DISMISSED with prejudice**.

## VI. Plaintiffs' Negligent Misrepresentation Claims.

Plaintiffs' negligent misrepresentation claims stem from the same facts underlying their fraud claims. Plaintiffs cannot sustain any such claims against the Cowboys Defendants. The alleged duties and injuries in this case arise from a contractual relationship between the NFL and Plaintiffs—and a contractual relationship did not exist between the Cowboys Defendants and Plaintiffs. The Cowboys Defendants did not have any duties of disclosure to Plaintiffs regarding the state of the seats described in their tickets. The Court, therefore, **DISMISSES with prejudice** Plaintiffs' negligent misrepresentation claims against the Cowboys Defendants for the same reason that their fraud claims were dismissed, based on the absence of a duty.

Additionally, negligent misrepresentation claims are subject to the independent injury doctrine. *See D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663-64 (Tex. 1998) ("Repudiating the independent injury requirement for negligent misrepresentation claims would potentially convert every contract interpretation dispute into a negligent misrepresentation claim."). Plaintiffs argue, however, that to the extent their negligent misrepresentation claims are premised on Defendants' concealment of material facts, they are not barred by the

independent injury doctrine because of allegations that they were *induced* to purchase the tickets and expend costs on the basis of such failures to disclose. Plaintiffs' inducement argument, as briefed, relates exclusively to their fraud claims. Plaintiffs' negligent misrepresentation claims *are not* claims for fraudulent inducement, *see id.* at 663-64, and are barred by the independent injury rule.[5] *Cf. Enis v. Bank of Am., N.A.*, No. 12-CV-295, 2012 WL 4741073, at *7 (N.D. Tex. Oct. 3, 2012) (Fitzwater, C.J.). The fact that Plaintiffs have not suffered any injury independent of the contract is reason enough to find Plaintiffs' negligent misrepresentation claims improperly brought. *See D.S.A., Inc.*, 973 S.W.2d at 663 ("Without deciding whether HISD breached a *legal* duty independent of its *contractual* duties, we conclude that HISD's negligent misrepresentation claim must fail for lack of any independent *injury*."); *Smith*, 2013 WL 3324195, at *10 (holding that "even if Plaintiffs' claim is for breach of a duty imposed by law," plaintiffs' negligent

---

[5] To the extent that Plaintiffs argue their negligent misrepresentation claims are not foreclosed by the independent injury rule because they seek out-of-pocket expenses they incurred to travel to Super Bowl XLV, in reliance on the NFL's alleged concealment of material facts, the Court disagrees. Plaintiffs appear to raise this argument exclusively with respect to their fraud, and not their negligent misrepresentation claims. *See* Pls.' Opp. to NFL's Mot. to Dismiss at 1 ("Plaintiffs clarify that they seek to recover only reliance damages in support of their fraud claims, which is an additional reason why their fraud claims are not barred by the economic loss doctrine."). In any case, such claims are barred by the independent injury rule. *See Simms*, 879 F. Supp. 2d at 599-600; *see also, e.g.*, *Jones v. Wells Fargo Bank, N.A.*, No. 4:12-CV-446, 2013 WL 4414321, at *2 (E.D. Tex. August 13, 2013) ("Plaintiffs assert that the economic loss doctrine does not bar [their negligent misrepresentation] claim. Plaintiffs . . . assert that they are seeking damages outside of the contract, including their time, out-of-pocket expenses, and mental anguish. . . . Texas courts have [r]ejected similar claims of negligent misrepresentation on the basis of the economic loss rule. The court overrules Plaintiffs' objections."); *Miller v. CitiMortgage, Inc.*, No. 3:11-CV-2786-L, 2013 WL 4766808, at *12 (N.D. Tex. Sept. 5, 2013) (Lindsay, J.) (finding negligent misrepresentation claims barred by the independent injury rule, although plaintiff sought "out-of-pocket expenses incurred in reliance on the alleged representations" because she was "seeking by this tort claim recovery of economic damages that are recoverable under a breach of contract claim."). This Court's ruling in *Hurd v. BAC Home Loans Servicing, LP* is distinguishable because, in that case, plaintiff's alleged injuries were "over and above" the economic loss to the subject matter of the contract. 880 F. Supp. 2d 747, 764 (N.D. Tex. 2012). Here, by contrast, Plaintiffs' alleged out-of-pocket expenses all relate to expenses that would have been incurred under the contract. Plaintiffs do not appear to be seeking mental anguish damages for anything but their fraud claims, *see* Pls.' Opp. to NFL's Mot. to Dismiss at 1, 17, but even if they were, these damages are not available as a remedy for this claim. *See Smith v. Wells Fargo Bank, N.A.*, No. 12-CV-4633, 2013 WL 3324195, at *10 (N.D. Tex. June 28, 2013) (Kinkeade, J.).

misrepresentation claim still failed as a matter of law because plaintiffs were "seeking by this tort claim recovery of economic damages that are recoverable under a breach of contract claim.").

For these reasons, Plaintiffs' claims for negligent misrepresentation are **DISMISSED with prejudice**.

VII. **Plaintiffs' Texas Deceptive Trade Practices Act ("DTPA") Claims**.

1. <u>**Sufficiency of Plaintiffs' DTPA Claims**</u>.

Plaintiffs also bring DTPA claims against Defendants for: (1) false, misleading, or deceptive acts; (2) breach of express and implied warranty; and (3) unconscionable actions.

Under Texas law, "a mere breach of contract, without more, is not a DTPA violation." *Rocky Mountain Helicopters, Inc. v. Lubbock Cnty. Hosp. Dist.*, 987 S.W.2d 50, 53 (Tex. 1998); *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex. 1996) (finding the mere failure to perform a prior promise not to constitute a DTPA violation) (citing *Holloway v. Dannenmaier*, 581 S.W.2d 765, 767 (Tex. App.–Ft. Worth 1979, writ dism'd); *Coffey v. Fort Wayne Pools, Inc.*, 24 F. Supp. 2d 671, 686 (N.D. Tex. 1998) (Boyle, J.) ("It is well settled that the mere failure to perform a promise does not constitute a misrepresentation actionable under the DTPA unless it can be shown that at the time the promise was made, the party making the promise had no intentions of fulfilling the promise.") (internal quotation marks and citation omitted).

For these reasons, Plaintiffs cannot establish DTPA claims on behalf of the "Displaced" and "Relocated/Delayed" Plaintiffs for representations affirmatively made on the face of their game tickets. Moreover, to the extent that the "Displaced" and "Relocated/Delayed" Plaintiffs bring DTPA claims for non-disclosure, these claims fail as a matter of law, because they would "plainly require the seller to have knowledge of the withheld information at the time of the sale."

*See Deburro v. Apple, Inc.*, No. A-13-CA-784-SS, 2013 WL 5917665, at *5 (W.D. Tex. Oct. 31, 2013). As noted above, Plaintiffs do not, and cannot, plausibly allege that any tickets were sold on knowledge that temporary seating would not be timely completed. *See supra* at 7-8.[6]

Assuming that the DTPA claims for breach of an express or implied warranty and unconscionable conduct are not barred by the independent injury rule, *see Simms*, 879 F. Supp. 2d at 603, the Court finds that these claims nevertheless fail as a matter of law. Plaintiffs cannot plead the existence of any express warranty on the facts alleged. *See Brooks v. U.S. Fire Ins. Co.*, 832 F.2d 1358, 1375 n.14 (5th Cir. 1987) ("Not performing at all, or performing incorrectly—neither leads to liability under the DTPA for breach of an express warranty."); *Sidco Prods. Mktg., Inc. v. Gulf Oil Corp.*, 858 F.2d 1095, 1099 (5th Cir. 1988) (rejecting claim for breach of express warranty, concluding that omissions are not affirmative representations in this context, and "thus cannot support a warranty claim, because express warranties must be explicit."); *S.I. Prop. Owners' Ass'n, Inc. v. Pabst Corp.*, 714 S.W.2d 358, 361 (Tex. App.–Corpus Christi 1986, writ ref'd) (same). Nor can Plaintiffs plead the existence of an implied warranty. *See Parkway Co. v. Woodruff*, 901 S.W.2d 434, 438-40, n.2 (Tex. 1995) (specifying specific warranties provided under the Texas Business & Commerce Code, and noting that none apply to a pure services transaction); *FFP Operating Partners, Inc. v. Andrews Transp., Inc.*, No. 05-98-250-CV, 2000 WL 863124, at *3 (Tex. App.– Dallas 2000) (unpublished) ("An implied warranty for services exists only when the services relate to the repair or modification of existing

---

[6] Plaintiffs do not appear to premise their DTPA laundry list violations on post-sale statements regarding obstructed views or the availability and installation of temporary seating. Even were they do so, however, these claims would still fail as a matter of law because the Court concludes that Defendants cannot be liable under the DTPA for post-transaction representations. *See, e.g.*, *Trigg Co., Inc. v. Honeywell, Inc.*, No. 9-95-180, 1996 WL 612852, at *4 (Tex. App.–Beaumont 1996, writ denied) ("The general rule is that post-transaction conduct or representations are not subject to D.T.P.A.").

tangible goods or property."). Finally, the Court finds as a matter of law that Plaintiffs' allegations do not, and cannot, state a claim of unconscionable conduct. *See* Tex. Bus. & Com. Code § 17.45(5) ("'Unconscionable action or course of action' means an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree.").

The Court concludes that Plaintiffs may only bring DTPA claims to the extent the Court has found the Obstructed View Plaintiffs have pleaded such claims against the NFL on the basis of the allegations underlying their fraudulent inducement by omission claim. In holding that such DTPA claims survive, the Court rejects the NFL's argument that these claims must be dismissed for lack of standing.[7] Plaintiffs' other DTPA claims are **DISMISSED with prejudice**.

2. **Abatement for Plaintiffs' Failure to Provide Adequate Notice**.

The NFL argues that, to the extent not dismissed, Plaintiffs' DTPA claims must be abated for Plaintiffs' failure to provide adequate notice to the NFL. The Court agrees.

Plaintiffs provided to the NFL four notice letters on behalf of each category of Plaintiffs. These letters fail to provide specific damages information as to any one Plaintiff, and thus fail to satisfy the DTPA notice requirements. *See* Tex. Bus. & Com. Code § 17.505(a):

> As a prerequisite to filing a suit seeking damages under Subdivision (1) of Subsection (b) of Section 17.50 of this subchapter against any person, a consumer shall give written notice to the person at least 60 days before filing the suit

---

[7] The NFL argues that these claims must be dismissed without prejudice, as no Plaintiff purporting to have such obstructed views has actually been identified. In making this argument, the NFL relies on this Court's holding in *Simms*, where the Court held that because the named plaintiffs asserting the DTPA claims were members of the "Displaced Class," they did not have standing to assert DTPA claims for failure to disclose that certain seats had obstructed views. 879 F. Supp. 2d at 603. The Court dismissed the DTPA claims as to those plaintiffs with prejudice, but without prejudice as to other potential plaintiffs who had obstructed view seating and chose to assert such claims. *Id.* Here, however, there are no representative plaintiffs; rather, this case was filed as an individual mass action. The NFL's reliance on this Court's holding in *Simms* for this proposition is, therefore, unpersuasive.

advising the person in reasonable detail of the consumer's specific complaint and the amount of economic damages, damages for mental anguish, and expenses, including attorneys' fees, if any, reasonably incurred by the consumer in asserting the claim against the defendant.

Plaintiffs' surviving DTPA claims are therefore abated until the 60th day after the Obstructed View Plaintiffs serve notice in compliance with § 17.505(a). *See* Tex. Bus. & Com. Code § 17.505(e). The following information must be provided in such notice: (1) the Plaintiff's name and seat number of where the Plaintiff sat (if a different seat number was on Plaintiff's ticket, that shall also be provided); (2) the categories of damages sought by each Plaintiff under the DTPA; (3) the amount of damages sought in each such category; and (4) the Plaintiff's claimed expenses and attorneys' fees.

**VIII.    Plaintiffs' Negligence Claims**.

Plaintiffs plead negligence against all Defendants. Since the negligence claim against the NFL is pleaded only in the alternative to a breach of contract claim, the Court does not reach it at this time. The Court will, however, address the negligence claim as to the Cowboys Defendants.

In Texas, a cause of action for negligence requires three elements: a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by that breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). Plaintiffs argue that the Cowboys Defendants owed a legal duty to Plaintiffs when they voluntarily assumed the responsibility for approval, construction, installation, completion, and safety of the temporary seats. Plaintiffs premise this argument on the voluntary or gratuitous undertaking doctrine, which states "one who voluntarily undertakes an affirmative course of action for the benefit of another has a duty to exercise reasonable care that the other's person or property will not be injured thereby." *Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 119-20 (Tex. 1976). Texas courts have used the Restatement of Torts to limit liability for the injury in a voluntary undertaking to physical harm.

*Id.*; *see also Stroud v. Meister*, No. 97-CV-0860-L, 2001 WL 282764, at *16-17 (N.D. Tex. Mar. 16, 2001) (Lindsay, J.).

The Cowboys Defendants argue that Plaintiffs do not allege any physical harm that resulted from the alleged actions taken by the Cowboys Defendants, and that Plaintiffs cannot recover for purely economic harm. The Court agrees. The gratuitous undertaking doctrine does not allow recovery for the type of economic harm for which Plaintiffs seek recovery. If the negligence claim stemmed from allegations that the temporary seating was unsafe and a Plaintiff was injured, a negligence action might be available. *See, e.g.*, *Stroud*, 2001 WL 282764, at *17 ("Stroud has suffered economic losses, not physical harm, and therefore cannot rely on voluntary undertakings . . . ."). The gratuitous undertaking doctrine does not support the claims asserted against the Cowboys Defendants.

Plaintiffs' claims for negligence against the Cowboys Defendants, therefore, are **DISMISSED with prejudice**.

IX. **Conclusion**.

For the reasons stated above, the Cowboys Defendants' Motion to Dismiss is **GRANTED** in its entirety. The NFL's Motion to Dismiss is **GRANTED** only to the extent specified herein, and otherwise **DENIED**.

**SO ORDERED**.

August 6, 2014.

_____
**BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS**