## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| JOSEPH GRECO, JULES BRODSKY, TODD J. CHRISTENSON, WILLIAM DICKIE, et al., | § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | C.A. No. 3:13-CV-1005-M |
| NATIONAL FOOTBALL LEAGUE, | § § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion for Partial Judgment on the Pleadings [Dkt. No. 133], Plaintiffs' Motion for Leave to File First Amended Complaint [Dkt. No. 152], and Plaintiffs' Motion for Stay Pending Resolution of the Appeal in the Related *Ibe* Matter [Dkt. No. 177]. For the reasons stated herein, Defendant's Motion for Partial Judgment on the Pleadings is **GRANTED**, Plaintiffs' Motion for Leave to File First Amended Complaint is **DENIED without prejudice**, and Plaintiffs' Motion for Stay Pending Resolution of the Appeal in the Related *Ibe* Matter is **GRANTED**.

### FACTS AND PROCEDURAL BACKGROUND

This case concerns the temporary seating problems encountered by ticketholders at Super Bowl XLV, which was played at Cowboys Stadium on February 6, 2011. On February 5, 2013, Plaintiffs filed their Original Petition in the 160th Judicial District of Dallas County, alleging claims for breach of contract and various tort claims against the National Football League ("NFL") and Jerral "Jerry" Wayne Jones, Dallas Cowboys Football Club, Ltd., JWJ Corporation, Cowboys Stadium, L.P., Cowboys Stadium GP,

1

LLC, and Blue & Silver, Inc. (collectively, "the Cowboys Defendants").  Dkt. No. 1-7.

Although the Plaintiffs in this case asserted their claims individually, plaintiffs in the

related *Simms* (now *Ibe*) case, represented by the same counsel, were seeking class

certification at the time this suit was filed.  *See Simms v. Jones*, 296 F.R.D. 485, 510

(N.D. Tex. 2013) (denying class certification).

On March 7, 2013, Defendants removed this matter to this Court, where it has

proceeded as an individual mass action on behalf of nearly 200 Plaintiffs.  Dkt. No. 1.

On August 6, 2014, this Court dismissed Plaintiffs' claims against the Cowboys

Defendants, leaving the NFL as the only remaining Defendant.  Dkt. No. 92.

The substantial number of Plaintiffs in this case has raised significant logistical

and scheduling issues that have caused the Court to discuss extensively with the parties

various strategies to resolve the cases.  *See* Dkt. No. 57 (2/25/14 Scheduling Conference);

Dkt. No. 66 (6/9/14 Telephone Conference); Dkt. No. 90 (7/16/14 Telephone

Conference).  Although the parties and the Court have on multiple occasions exchanged

dates for the entry of a Scheduling Order, no formal Scheduling Order has been entered

in this case, primarily due to a desire to await the outcome of the *Ibe* trial, in which there

were seven plaintiffs and in which judgment was entered on March 25, 2015.  *See Ibe v.*

*Nat'l Football League*, No. 3:11-CV-248-M (N.D. Tex. filed Feb. 8, 2011).  The *Ibe* case

is currently pending before the Fifth Circuit Court of Appeals.[1]  *Id.*, *appeal docketed*, No.

15-10242 (5th Cir. Mar. 31, 2015).  Nevertheless, the consistent and repeated

understanding between the Court and the parties has been that this case will proceed

according to bellwether trials, in which forty or so agreed-upon "Discovery Plaintiffs"

---

[1] There is no dispute that there is a substantial overlap between the legal and factual
issues in the *Ibe* case and this case.

would have their claims tried first.  *See* Dkt. No. 182, Def. Ex. A, Def. App. 2–12; Def. Ex. B, Def. App. 13–15.

The NFL moves for partial judgment on the pleadings that, as a matter of law, Plaintiffs cannot recover attorneys' fees from the NFL under Section 38.001 of the Texas Civil Practice and Remedies Code.  Alternatively, Plaintiffs move for leave to amend their Complaint to join four additional plaintiffs, and as defendants, the individual teams and owners that are members of the NFL along with the NFL Ventures entities that staged Super Bowl XLV.  Finally, Plaintiffs move to stay this case pending the resolution of the appeal of the *Ibe* case.

## ATTORNEYS' FEES

The NFL moves for partial judgment on the pleadings under Rule 12(c), arguing that Plaintiffs cannot, as a matter of law, recover attorneys' fees for their breach of contract claims under Section 38.001 of the Texas Civil Practice and Remedies Code.

### I.   Legal Standard

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial . . . ."[2]

---

[2] "Rule 7(a) provides that the pleadings are closed upon the filing of a complaint and an answer (absent a court-ordered reply), unless a counterclaim, cross-claim, or third-party claim is interposed, in which event the filing of a reply to a counterclaim, cross-claim answer, or third-party answer normally will mark the close of the pleadings." 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed. 2015). Here, Plaintiffs filed their Original Petition on February 5, 2013, and the NFL filed its Answer on August 20, 2014.  Dkt. No. 1-7; Dkt. No. 99.  The NFL filed its Motion for Partial Judgment on the Pleadings on December 3, 2014, meaning that the pleadings were closed for the purposes of Rule 12(c) at the time the NFL filed its Motion.  *See Nortel Networks Ltd. v. Kyocera Wireless Corp.*, No. CIV.A.3:02-CV-0032-D, 2002 WL 31114077, at n. 1 (N.D. Tex. Sept. 20, 2002) (Fitzwater, J.) (explaining the possibility a party might move for leave to amend the pleadings does not affect whether the pleadings are closed within the meaning of Rule 12(c)).

Fed. R. Civ. P. 12(c).  Judgment on the pleadings is proper when "material facts are not in dispute and judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."  *Herbert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990).

## II.    Analysis

Under the so-called American Rule, parties are required to bear their own attorneys' fees "absent explicit statutory authority" to the contrary.  *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health and Human Res.*, 532 U.S. 598, 602 (2001).  Whether a party may recover attorneys' fees under a statute is a question of law for the Court.  *Walker Int'l Holdings, Ltd. v. Republic of Congo*, 415 F.3d 413, 416 (5th Cir. 2005).  Where federal jurisdiction is based on diversity, state law controls the award of attorneys' fees.  *Mid-Continent Casualty Co. v. Chevron Pipe Line Co.,* 205 F.3d 222, 230 (5th Cir. 2000).

When applying Texas law, federal courts within the Fifth Circuit look to the Supreme Court of Texas for guidance.  *Citigroup Inc. v. Fed. Ins. Co*., 649 F.3d 367, 371 (5th Cir. 2011).  In the absence of a binding decision from the Supreme Court of Texas, this Court may look to decisions of intermediate state appellate courts for guidance; however, those decisions are not controlling, and this Court must ultimately make a judgment as to how the Supreme Court of Texas would rule on the issue.  *United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 565–66 (5th Cir. 2005).

Under Texas law, a litigant can recover attorneys' fees "only if specifically provided for by statute or contract."  *Epps v. Fowler*, 351 S.W.3d 862, 865 (Tex. 2011) (citing *Intercontinental Grp. P'ship v. KB Home Lone Start L.P.*, 295 S.W.3d 650, 653

(Tex. 2009)).  Here, the Super Bowl ticket contract involved did not contain an attorneys'

fees provision, so Plaintiffs must seek attorneys' fees under § 38.001 of the Texas Civil

Practice and Remedies Code.  *See* Def. Ex. 1 (Super Bowl XLV Ticket); Dkt. No. 1 ¶ 11

(Pls. Third Amended Class Action Complaint).

Section 38.001 states "[a] person may recover reasonable attorneys' fees from an

*individual or corporation*, in addition to the amount of a valid claim and costs if the

claim is for . . . an oral or written contract."  Tex. Civ. Prac. & Rem. Code § 38.001(8)

(emphasis added).  In other words, in a suit for breach of contract, a "person" may only

recover attorneys' fees from "an individual or corporation."  *Id.*  Therefore, the issue

before this Court is whether Section 38.001 allows Plaintiffs to recover attorneys' fees

from the NFL, which is an unincorporated association.

When construing a Texas statute, the Fifth Circuit abides by the same rules of

statutory construction applied by Texas courts.  *Wright v. Ford Motor Co.*, 508 F.3d 263,

269 (5th Cir. 2007).  "[I]t is a cardinal rule in Texas that a court construes a statute, 'first

by looking to the plain and common meaning of the statute's words.'"  *Fitzgerald v.*

*Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999) (quoting *Liberty*

*Mut. Ins. Co. v. Garrison Contractors*, 966 S.W.2d 482, 484 (Tex. 1998)).  According to

Texas courts, "[i]f the statutory language is unambiguous, the judge's inquiry is at an

end." *Gonzalez v. Guilbot*, 315 S.W.3d 533, 540 (Tex. 2010).  Clear text is assumed to be

determinative of legislative intent.  *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d

433, 437 (Tex. 2009).

The Supreme Court of Texas has succinctly explained the reasoning behind its

focus on plain language:

There are sound reasons we begin with the plain language of a statute before resorting to the rules of construction.  For one, it is a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent.  Also, ordinary citizens should be able to rely on the plain language of a statute to mean what it says.  Moreover, when we stray from the plain language of a statute, we risk encroaching on the Legislature's function to decide what the law should be.  *Wright*, 508 F.3d at 270 (quoting *Fitzgerald*, 966 S.W.2d at 866).

The NFL argues that it is not an "individual" because it is not a "human being," and that, as an unincorporated association, it is clearly not a "corporation." Dkt. No. 133 at 6 (citing *City of Corinth v. NuRock Dev., Inc.*, 293 S.W.3d 360, 370 (Tex. App.—Fort Worth 2009, no pet.); Pls. Orig. Pet. ¶ 2.8).  Thus, the NFL urges that the plain language of Section 38.001 precludes Plaintiffs from recovering attorneys' fees from the NFL.

Plaintiffs respond that the terms "individual" and "corporation" in Section 38.001 are ambiguous, because neither the Civil Practice and Remedies Code nor the Texas Code Construction Act define "individual" or "corporation."  Dkt. No. 137 at 6 (Pls. Resp.).  Plaintiffs also argue that there is no authoritative definition of "individual" that requires this Court to conclude that "individual" refers only to a human being, and that "corporation" can also be interpreted very broadly.  *Id.* at 7.  Thus, Plaintiffs argue that this Court should look to legislative intent to determine the meaning of "individual or corporation." *Id.* at 6.

Plaintiffs rightly note that the cardinal rule of statutory construction is to determine legislative intent; however, this Court need not look further than the plain language of the Section 38.001 to determine legislative intent because it is presumed that the legislature intended what the plain meaning of its chosen words conveys.  *Wright*, 508 F.3d at 270.  Thus, since both "individual" and "corporation" are not expressly defined, this Court refers first and foremost to the "plain and common meaning of the statute's

6

words." *Liberty*, 966 S.W.2d at 865; *see TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) ("Undefined terms in a statute are typically given their ordinary meaning . . . [a]nd if a statute is unambiguous, we adopt the interpretation supported by the plain language.").

The plain meaning of "individual" as used in Section 38.001 is "human being." *See Ganz v. Lyons P'ship, L.P.*, 173 F.R.D. 173, 177 (N.D. Tex. 1997) (Urbom, J.); *Hoffman v. L & M Arts*, 2015 WL 1000838 at *5 (N.D. Tex. Mar. 6, 2015) (Fitzwater, J.), *appeal docketed*, No. 15-10293 (5th Cir. Apr. 8, 2015) (citing to *Merriam-Webster's Collegiate Dictionary* 635 (11th ed. 2003) (defining "individual" as "a single human being as contrasted with a social group or institution"); s*ee also*, Tex. Bus. Orgs. Code §1.002(39) (defining "individual" as a natural person and distinguishing "association," "corporation," "individual," and "person"). Thus, according to the ordinary meaning of the word, an unincorporated association is not an "individual."

The Court's interpretation of "individual" is also supported by the legislative history of Section 38.001. The statute's predecessor, article 2226 of the Texas Revised Civil Statutes, authorized any "person, corporation, partnership, or other legal entity" to recover attorneys' fees from "a person or corporation." Tex. Rev. Civ. Stat. art. 2226. When the Texas Legislature enacted the Texas Code Construction Act in 1985, the term "person" included "*corporation*, organization, government or governmental subdivision or agency, business trust, estate, partnership, *association*, and any other legal entity." Tex. Gov't Code § 311.005(2) (emphasis added). That same year, the Legislature recodified article 2226 into Section 38.001, and changed the phrase covering who could be made to pay attorneys' fees from "person or corporation" to "individual or

7

corporation."  Instead of using "individual" to describe who could recover attorneys'

fees, as was the case under article 2226, the Legislature used the broader word "person."

In other words, the Legislature expanded who could recover attorneys' fees and narrowed

those from whom attorneys' fees might be recovered.  Broadly construing "individual" to

include other non-corporate entities, such as an unincorporated association, would ignore

this change.  Reading unincorporated association back in to the statute's use of

"individual" would defy the plain meaning of the statute and the intent of the Legislature.

Likewise, the NFL, as an unincorporated association, is not a corporation under

the plain language of Section 38.001.  Plaintiffs urge this Court to broadly construe

"corporation" to include an unincorporated association.  However, Texas courts presume

that the Legislature chooses statutory language carefully, "including each word chosen

for a purpose, while purposefully omitting words not chosen." *TGS-NOPEC*

*Geophysical*, 340 S.W.3d at 439.  Statutes are not interpreted "in any manner that renders

any part of the statute superfluous." *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*,

271 S.W.3d 238, 256 (Tex. 2009).  Reading "corporation" to include an unincorporated

entity would render the term meaningless. *Compare* Black's Law Dictionary 415 (10th

ed. 2014) (defining "corporation" as "[a]n entity . . . having authority under law to act as

a single person *distinct from the shareholders who own it*.") (emphasis added), *with*

Black's Law Dictionary 148 (10th ed. 2014) (defining "association" as "[a]n

unincorporated organization that is *not a legal entity separate from the persons who*

*compose it*.") (emphasis added).  Furthermore, construing "individual or corporation" to

include unincorporated associations would make "person," a definition that includes

corporations, associations, and any other legal entities, interchangeable with the phrase

"individual or corporation," thereby rendering superfluous the different language in the statute.

Although the Texas Supreme Court has not defined "individual or corporation" in Section 38.001, most courts to address the issue have found the terms in the phrase to be unambiguous. Indeed, the NFL correctly notes that every Texas appellate court has held that "individual or corporation" does not include unincorporated entities. Dkt. No. 133 at 7–8.[3] Other decisions from the Northern District of Texas have reached the same holding. *Id.* at 7; *see Hoffman*, 2015 WL 1000838, at *5 (finding that a limited liability company is not an "individual," and noting that courts interpreting Section 38.001 "have uniformly held that the term 'individual' refers to 'humans' and does not include partnerships, limited partnerships, limited liability partnerships, governmental subdivisions or 'other legal entities'") (quoting *Baylor Health Care Sys., v. Nat'l Elevator Inds. Health Benefit Plan*, 2008 WL 2245834, at *6 (N.D. Tex. June 2, 2008) (Solis, J.)); *Ganz*, 173 F.R.D. at 176 (holding that a limited partnership is not an "individual or corporation").

Furthermore, the Legislature frequently distinguishes between corporate and non-corporate entities. *See* Dkt. No. 141 at 4, (NFL's Reply Br.) (quoting Tex. Bus. Orgs.

---

[3] *See Irving Flood Control Dist. v. Calgary Inc.*, No. 05-01-01462-CV, 2002 Tex. App. LEXIS 4997, at *9 (Tex. App.—Dallas 2002, no pet.) (holding that the plain language of "individual or corporation" does not apply to an unincorporated association); *Fleming & Associates, L.L.P. v. Barton*, 425 S.W.3d 560, 574-76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (finding that a limited liability partnership is not an "individual or corporation"); *Base-Seal, Inc. v. Jefferson Cnty.*, 901 S.W.2d 783, 786 (Tex. App.—Beaumont 1995, writ denied) (finding that a county is not an "individual or corporation"); *Texas A&M Univ.-Kingsville v. Lawson*, 127 S.W.3d 866, 874 (Tex. App.—Austin 2004, pet. denied) (finding that a university was not an "individual or corporation"); *City of Corinth v. NuRock Dev., Inc.*, 293 S.W.3d 360, 370 (Tex. App.—Fort Worth 2009, no pet.) (finding that a city was not an "individual or corporation").

Code § 301.003(2)) ("Professional association means an association, as distinguished from either a partnership or a corporation."). Therefore, the Court must assume the Legislature's use of "corporation" excludes unincorporated entities from potential liability for attorneys' fees under Section 38.001.

Plaintiffs argue that the change from "person or corporation" to "individual or corporation" was intended to be a non-substantive revision to article 2226, as evidenced by Section 1.001(a) of the Texas Civil Practice and Remedies Code, which states in part that "[t]he program contemplates a topic by topic revision of the state's general and permanent statute law without substantive change." Dkt. No. 137 at 11–12 (quoting Tex. Civ. Prac. & Rem. Code § 1.001(a)). However, as the first part of Section 1.001(a) reads, the Civil Practice and Remedies Code was "enacted as a part of the state's continuing statutory revision program, begun by the Texas Legislative Council in 1963." *Id.* As with other Texas statutes, the legislature recodified Section 38.001 as part of a statutory revision program to "'clarify and simplify the statutes and to make the statutes more accessible, understandable, and usable.'" *Fleming Floods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 283 (Tex. 1999) (quoting Tex. Gov't Code § 323.007(a)). However, the Texas Supreme Court has already found that statutes enacted under Section 1.001(a) "without substantive change" may actually result in substantive change when the Court analyzes the plain language of the statute. In *Fleming Floods*, the Court overturned the court of appeals' finding that the newly recodified Tax Code was intended to leave existing statutes unchanged. *Fleming Floods*, 6 S.W.3d at 283. Instead, the Court found that the new words in the statute would substantively change the prior law "if given effect as they are written." *Id.* The Court noted that the Code Construction Act need only be

used at the court's discretion to determine "'whether or not the statute is considered ambiguous on its face.'"  *Id.* (quoting Tex. Gov't Code § 311.023).  Since Section 38.001 is not facially ambiguous, the Code Construction Act cannot be used to contradict the plain language of Section 38.001.

Plaintiffs also contend that the purpose of Section 38.001 would be frustrated if the NFL and other unincorporated associations are excluded from its coverage.  Plaintiffs rely on Section 38.005, which states that Chapter 38 should "be liberally construed to promote its underlying purposes," and Plaintiffs argue that the purpose of Section 38.001 is to award attorneys' fees for breach of contract claims irrespective of the organizational form of the business entity sued. Dkt. No. 133 at 9 (citing Tex. Civ. Prac. & Rem. Code § 38.005).  However, this Court is not in a position to divine some unstated purpose of Section 38.001 when the plain language of the statute excludes unincorporated associations.  *See Ganz*, 173 F.R.D. at 176 ("Although it is true that section 38.005 provides that the attorney[s'] fee statute 'shall be liberally construed to promote its underlying purposes,' I cannot think that an underlying purpose is to find liability for such fees against an entity excluded by a statutory amendment."); *see McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003) ("If statutory language is unambiguous, the Supreme Court will interpret the statute according to its plain meaning.").

Plaintiffs attempt to bolster their position by emphasizing that "person," as defined under the Code Construction Act, includes governmental entities, while "individual," as used in Section 38.001, does not include governmental entities.  Plaintiffs cite the Revisor's Note, which states that "'the term 'person' was changed to 'individual' primarily to avoid application of the Code Construction Act's new definition of 'person,'

which could potentially subject government entities to liability.'" Dkt. No. 133 at 15

(citing *Fleming & Associates, L.L.P. v. Barton*, 425 S.W.3d 560, 575 (Tex. App.—

Houston [14th Dist.] 2014, pet. denied).[4]  However, as the Texas Supreme Court

explained in *Fleming Floods*, "prior law and legislative history cannot be used to alter or

disregard the express terms of a code provision when its meaning is clear from the code."

6 S.W.3d at 284.  The Texas Supreme Court recently reaffirmed this principle, explaining

that courts should not reference the former text of a statute that has been recodified if the

current text is unambiguous.  *Dealers Elec. Supply Co. v. Scroggins Const. Co., Inc.*, 292

S.W.3d 650, 657 (Tex. 2009) (citing *Fleming Floods*, 6 S.W.3d at 283; Tex. Prop. Code §

1.001(a)).[5]  Because this Court finds the text of Section 38.001 to be unambiguous, it will

not give undue weight to legislative history or cases decided prior to the recodification of

Section 38.001.[6]

---

[4] The Revisor's Note further proves that the Legislature purposefully chose the language
of Section 38.001 and was aware that the definition of "person" under the Code
Construction Act was broader than the meaning of "person" under article 2226.  *See Base
Seal, Inc. v. Jefferson Cnty*, 901 S.W.2d 783, 786 (Tex. App—Beaumont 1995, writ
denied) (reviewing the Revisor's Note and defining individual as a human being); *see
also Hoffman*, 2015 WL 1000838 at *6, n. 7 ("[T]he drafters of § 38.001 knew that the
term 'person' would include other non-corporate entities . . . yet effectively chose not to
include 'other legal entities' when it changed the word 'person' to 'individual.'").

[5] Prior to the amendment, the Trust Fund Act did not apply to "receipts under a
construction contract if the full contract amount was covered by a separate corporate
surety bond."  That statute was amended to read that the Trust Fund Act did not apply to
"a corporate surety who issues a payment bond covering the contract for the construction
or repair of the improvement."  *See Dealers Elec. Supply*, 292 S.W.3d at 657 (noting the
changes to Tex. Prop. Code § 162.004).

[6] Plaintiffs also rely on two Texas Supreme Court cases that affirmed the award of
attorneys' fees against a partnership and limited liability company.  Dkt. No. 137 at 3.
However, the interpretation of "individual or corporation" was not specifically raised on
appeal. *See Baylor Health Care Sys.*, 2008 WL 2245834, at *4 ("[N]one of these cases
addressed the issue of recoverability of statutory attorney's fees from a defendant under
the 'individual or corporation' language because the issue was not presented on appeal.").

Finally, Plaintiffs argue that a literal reading of Section 38.001, as argued by the NFL, would produce "patently absurd outcomes." Dkt. No. 137 at 17. Plaintiffs claim it would be absurd to interpret "individual" and "corporation" to exclude unincorporated entities because "a business entity formed as a 'corporation' would be subject to liability for attorneys' fees for breaching a contract, while that same business entity would be relieved of liability had it chosen a different form of organization." *Id.* Plaintiffs further argue that it would be arbitrary for two companies engaging in the same business activities, or even entering into the same contracts, to be subject to different results. *Id.* However, it is hardly absurd that differently situated business entities are subject to differing levels of liability. Indeed, one of the primary purposes of choosing one form of business organization over another is because of differing kinds of liability. The Legislature, if it so intended, could have applied the attorneys' fees provision to all plaintiffs and defendants; however, the plain language of the statute indicates it chose not to do so.

## III.   Conclusion

The plain language and ordinary meaning of "individual or corporation" excludes an unincorporated association from liability for attorneys' fees. Because the language of Section 38.001 is clear, this Court's inquiry is at an end. The Defendant's Motion for Partial Judgment on the Pleadings is therefore **GRANTED**.

## AMENDED COMPLAINT

Before the Court is Plaintiffs' Motion for Leave to File First Amended Complaint [Dkt. No. 152]. Plaintiffs move for leave to amend their Complaint, seeking to join (1) an additional four plaintiffs, (2) NFL Ventures, L.P. and NFL Ventures, Inc.

(collectively, "NFL Ventures"), which Plaintiffs believe were responsible for organizing and staging Super Bowl XLV, and (3) the legal entities that own the thirty-two NFL member teams, along with the thirty-two individual owners of those teams.

## I.   Legal Standard

When there is no Scheduling Order in place to govern the deadline for amending pleadings, leave to amend is determined according to the standard set forth in Fed. R. Civ. P. 15.  Under Rule 15, a "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  Rule 15(a) "evinces a bias in favor of granting leave to amend," meaning a district court must have a "substantial reason" to deny leave.  *Chitimacha Tribe of Louisiana v. Harry L. Laws Co.*, 690 F.2d 1157, 1163 (5th Cir. 1982); *Jamieson By & Through Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985).  However, leave is not automatic under Rule 15, and the district court retains discretion.  *Moore v. Manns*, 732 F.3d 454, 456 (5th Cir. 2013) (citation omitted).

A court deciding whether to grant leave should consider several factors, including "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.'"  *In re Am. Int'l Refinery, Inc.*, 676 F.3d 455, 466–67 (5th Cir. 2012) (quoting *In re Southmark,* 88 F.3d 311, 315 (5th Cir.1996)).  Unless the non-moving party can show one of these factors, leave should be freely given.  *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "[T]hat generous standard is tempered by the necessary power of a district court to manage a case."  *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 678 (5th Cir.) *cert. denied sub nom. Priester v. JPMorgan Chase Bank, N.A.*, 134 S. Ct. 196, 187

L. Ed. 2d 256 (2013) (quoting *Schiller v. Physicians Resource Group Inc.,* 342 F.3d 563,

566 (5th Cir. 2003)).  "[A] district court abuses its discretion . . . when it gives no reasons

for denying a timely motion to amend, at least when the defendant would not be unduly

prejudiced by the amendment."  *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d

262, 270 (5th Cir. 2010).

## II.   Additional Plaintiffs

Plaintiffs move to join four additional plaintiffs—Paul Ober, Mohit Goyal, Marie

Pace, and Patricia Jones—each of whom purchased tickets to attend Super Bowl XLV

and allegedly suffered damages related to the temporary seating problems that are alleged

to have troubled the other Plaintiffs in this case.[7]

Plaintiffs argue that leave to amend should be granted to add these four

individuals as named plaintiffs because (1) there is no undue delay—no deadline for

amended pleadings has passed, and no trial date has been set; (2) there is no bad faith or

dilatory motive—these four plaintiffs simply want to file their claims before the statute of

limitations expires; (3) there is no evidence of repeated failure to cure deficiencies—this

would be the first amendment to Plaintiffs' Original Petition; (4) there is no undue

prejudice to the NFL—none of these four individuals are among the "Discovery

Plaintiffs," and thus will not be part of the initial bellwether trials; additionally, their

claims are consistent with many of the Plaintiffs in this matter, and they will provide the

---

[7] Ober's two seats were allegedly not available for Super Bowl XLV, making him a "Displaced" plaintiff.  Goyal was allegedly delayed in getting to his seat because the seats were not ready when the gates opened, making him a "Delayed" plaintiff.  Jones allegedly had an obstructed view of the playing field, making her an "Obstructed View" plaintiff.  Pace is alleged to have received a seat different from that on her ticket, and to have been delayed in getting to her seat, making her a "Relocated" plaintiff.  *See* Dkt. No. 152 at 3–4.

same responses to interrogatories and documents as ordered by the Court; and (5) the amendment is not futile because each of the four individuals had seats in the uninstalled temporary seats that gave rise to the claims in this suit, i.e., their claims are as meritorious as the already-joined Plaintiffs.  Dkt. No. 152 at 3–4.

The NFL does not oppose the concept of adding these four individuals, subject to all prior rulings by this Court and the NFL's defenses and grounds for dismissal.  Dkt. No. 164 at 1 n. 1.  However, because the NFL finds Plaintiffs' proposed First Amended Complaint objectionable for other reasons discussed below, the NFL asks the Court to deny leave to amend and to instruct these four individuals to file a joinder to the current Complaint, as was done earlier in this litigation.  *Id.* (citing Dkt. Nos. 37-38).

The Court agrees with the NFL that the most efficient way to join these additional individuals will be pursuant to an agreed joinder, and the Plaintiffs may do so while the case is otherwise stayed.  *See* Dkt Nos. 37 and 38.

## III.     NFL Teams, Owners, and NFL Ventures

Plaintiffs also seek leave to amend to join (1) the individual and corporate owners of the thirty-two NFL, and (2) NFL Ventures, Inc. and NFL Ventures, L.P. (collectively, "NFL Ventures"), which Plaintiffs allege organized, staged, and earned substantial revenue from Super Bowl XLV.  Plaintiffs seek to join the owners and NFL Ventures after the NFL moved for partial judgment on the pleadings on attorneys' fees.  Dkt. No. 137 at 23 ("In the further alternative, if the Court is inclined to find Section 38.001 does not subject the NFL to liability for attorneys' fees, then Plaintiffs . . . should be granted leave to amend to add the proper individual and corporate defendants to this lawsuit.");

Dkt. No. 152 at 2.  Because the Court granted the NFL's Motion for Partial Judgment on the Pleadings, the Court will consider the joinder of NFL Ventures and the owners.

### A.  Undue Delay, Bad Faith, and Dilatory Motive

Plaintiffs argue that there is no undue delay, bad faith, or dilatory motive because the need for their proposed amendment only arose when the NFL filed its Motion for Partial Judgment on the Pleadings in December 2014.  Plaintiffs also note that (1) no Scheduling Order has been entered, meaning no pretrial deadlines have been set; and (2) this would be the first amendment to Plaintiffs' Original Petition.

The NFL responds that Plaintiffs have unduly delayed in moving for leave to amend, and Plaintiffs merely seek to avoid the consequences of their inability to recover attorneys' fees under Tex. Civ. Prac. & Rem. Code § 38.001, which the NFL argues is no more of an obstacle now than it was when Plaintiffs filed their Original Petition in this case two years ago.

In *Smith v. EMC Corp.*, the Fifth Circuit held this Court acted within its discretion in denying leave to amend where the plaintiff Smith did not move to amend his complaint until two months after the close of trial.  393 F.3d at 598.  Similarly, in *Lozano v. Ocwen Fed. Bank, FSB*, the Fifth Circuit affirmed a district court's denial of leave to amend where the Lozanos had previously been granted leave to assert a fraud claim, but omitted the fraud claim from a subsequent amended complaint.  489 F.3d 636, 643–44 (5th Cir. 2007).  The district court later denied leave, finding that the Lozanos had been aware of the factual underpinnings of their fraud claim for some time and had not been diligent in asserting it.  *Id.* at 644.  The Fifth Circuit affirmed, holding that the procedural history of the case and its deferential standard of review made the district court's denial of leave a

17

proper exercise of discretion.  *Id.*  The Fifth Circuit has also found undue delay and prejudice in other cases where, although leave was not sought on the eve of trial, the moving party had knowledge of the facts underlying the amendment for a significant period of time and offered no reasonable explanation for the delay.  *See, e.g.*, *Matter of Southmark Corp.*, 88 F.3d 311, 316 (5th Cir. 1996); *Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, 1099 (5th Cir. 1979), *cert. denied*, 446 U.S. 939, 100 (1980); *E.E.O.C. v. Serv. Temps Inc.*, 679 F.3d 323, 334 (5th Cir. 2012).  However, many courts have explained that there is a presumption of timeliness when a party moves for leave to amend before a court-ordered deadline in a Scheduling Order.  *See, e.g.*, *Poly-Am., Inc. v. Serrot Int'l Inc.*, No. CIV. A. 3:00-CV-1457, 2002 WL 206454, at *1 (N.D. Tex. Feb. 7, 2002) (Fitzwater, J.); *Pyramid Transp., Inc. v. Greatwide Dallas Mavis, LLC*, No. 3:12-CV-0149-D, 2012 WL 5875603, at *2 (N.D. Tex. Nov. 21, 2012) (Fitzwater, J.).

The procedural history of this case does not support a finding of undue delay, bad faith, or dilatory motive.  The Court has not entered a Scheduling Order in this case; although dates were discussed, this matter was always proceeding after *Ibe*, which only recently went to trial and is currently on appeal, so a Scheduling Order awaited the conclusion of *Ibe*.[8]  Those facts alone weigh in favor of finding no undue delay, dilatory motive, or bad faith on the part of Plaintiffs, for if there is a presumption of timeliness when a party moves for leave before the expiration of a court-ordered deadline, that presumption becomes nearly irrebuttable when there is no court-ordered deadline.

---

[8] The Court communicated with the parties about an April 21, 2015 deadline for discovery and an April 28, 2015 deadline for dispositive motions.  *See* Dkt. No. 182, Def. Ex. B.

In their Original Petition filed on February 13, 2013, Plaintiffs sought, among other relief, attorneys' fees from the NFL and Cowboys entities.  Dkt. No. 1-7 ¶ 13.4. Some of the Defendants in Plaintiffs' Original Petition were corporations, Dallas Cowboys Football club, Ltd., JWJ Corporation, and Blue & Silver, Inc.  *Id.* ¶¶ 2.09-2.10, 2.13.  However, this Court dismissed those entities and the other Cowboys Defendants on August 6, 2014.  Dkt. No. 92.  Thus, Plaintiffs were left to pursue their claims exclusively against the NFL, an unincorporated association.  On September 30, 2014, in *Ibe*, this Court granted, in part, the NFL's motion for partial summary judgment.  In that decision, this Court suggested that Plaintiffs would be entitled to recover attorneys' fees against the NFL under Tex. Civ. Prac. & Rem. Code § 38.001, and therefore that the NFL's Rule 68 offers of judgments were inadequate to moot Plaintiffs' claims.  *Ibe v. Nat'l Football League*, No. 3:11-CV-248-M, 2014 WL 4906886, at *11 (N.D. Tex. Sept. 30, 2014).  On December 3, 2014, the NFL moved for partial judgment on the pleadings that Plaintiffs could not, as a matter of law, recover attorneys' fees under § 38.001 against the NFL. Dkt. No. 133.  This prompted Plaintiffs to move for leave to amend, which they did in their December 24, 2014 opposition to the NFL's motion.  Dkt. No. 137.

Although Plaintiffs waited over one year and ten months from the filing of their Original Petition to move for leave to amend, they waited only four months after the dismissal of the Cowboys Defendants and three months after this Court's summary judgment ruling in *Ibe*.  Furthermore, this Court had explicitly suggested in its *Ibe* ruling that Plaintiffs would be able to recover attorneys' fees from the NFL under § 38.001. Given the foregoing, including the absence of a Scheduling Order, the Court finds no undue delay, dilatory motive, or bad faith on the part of Plaintiffs.  *Carson v. Polley*, 689

F.2d 562, 584 (5th Cir. 1982) ("Merely because a claim was not presented as promptly as possible, however, does not vest the district court with authority to punish the litigant.").

### B. Prejudice to the NFL

Plaintiffs argue that the NFL would not be prejudiced if leave were granted because the substantive allegations in this action will remain the same, and thus the NFL will not need to dramatically change its litigation strategy or undertake additional discovery.

The NFL responds that it would be prejudiced if leave were granted—discovery for the first bellwether trial is by agreement set to close soon, and the Court discussed a summer trial date with the parties. The NFL argues that if these new parties were joined, the schedule would be substantially delayed because of the need for new discovery and the likelihood that threshold jurisdictional motions will be filed by many of the proposed new parties.

The Court finds that the NFL would not suffer the type of prejudice necessary to warrant denying Plaintiffs leave. The NFL will have ample notice of the nature of Plaintiffs' Amended Complaint before discovery is closed and a trial date is set. *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997) ("[T]he touchstone of the inquiry under rule 15(a) is whether the proposed amendment would unfairly prejudice the defense by denying the defendants notice of the nature of the complaint."); *see Merritt Hawkins & Associates, LLC v. Gresham*, 300 F.R.D. 311, 314 (N.D. Tex. 2014) (Solis, J.) (rejecting argument that upcoming deadlines in Scheduling Order supported prejudice finding where court would be amenable to extending relevant deadlines). Accordingly, because no trial date, dispositive motion deadline, or discovery deadline have been set,

and the Court is willing to set reasonable deadlines for each, there is no prejudice to the NFL in allowing the joinder of NFL Ventures and the NFL team owners.

### C. Futility

To determine whether joining the proposed additional defendants would be futile, courts "apply the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) (citations and internal quotation marks omitted).  In other words, a futility finding is warranted if "the amended complaint would fail to state a claim upon which relief could be granted."  *Id.* However, "[i]f a proposed amendment is not *clearly* futile, then denial of leave to amend is improper."  *Moore v. Dallas Indep. Sch. Dist.*, 557 F. Supp. 2d 755, 759–60 (N.D. Tex. 2008) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* § 1487, at 637, 642 (2d ed. 1990)) (emphasis in original) *aff'd,* 370 F. App'x 455 (5th Cir. Mar. 12, 2010).

### i.  NFL Ventures

Plaintiffs argue that NFL Ventures, Inc. and NFL Ventures, L.P. were responsible for organizing and staging Super Bowl XLV, and earned the NFL substantial revenue, making both entities parties to the Super Bowl XLV ticket contract.

The NFL responds that joining NFL Ventures would be futile because, as this Court has previously held, the NFL and Plaintiffs were the only parties to the Super Bowl XLV ticket contract, which is the basis for each of Plaintiffs' claims.  Thus, the NFL argues that Plaintiffs cannot state legally sufficient claims against NFL Ventures because, as this Court held when it dismissed the Cowboys Defendants, merely being responsible for some work at the Super Bowl does not make one a party to the contract.  *See* Dkt. No.

92 at 4.  Alternatively, the NFL argues that adding NFL Ventures, L.P., which conducts

operations through its subsidiaries, is the only entity that should be joined.  Dkt. No. 164

at 6 n.19 (citing Pls.' Ex. 4, Pls.' App. 20, 27-28).  The NFL notes that NFL Ventures,

Inc. is the general partner of NFL Ventures, L.P., and is not alleged to have done

anything in connection with Super Bowl XLV.  *Id.*  However, the NFL argues that even

joining NFL Ventures, L.P. would be futile because it would still not be an "individual or

corporation" under Tex. Civ. Prac. & Rem. Code § 38.001, meaning Plaintiffs would be

unable to recover attorneys' fees from NFL Ventures, L.P.  Dkt. No. 164 at 6 n. 19.

The NFL has an events department, which oversaw the staging of Super Bowl

XLV, including planning the event, and accommodating fans, guests, and partners.  Pls.'

Ex. 3 at 22:4-19, 23:11-21.  Eric Grubman, Executive Vice President of the NFL,

described NFL Ventures as one of the NFL's legal entities "that comprises a number of

the business units and operations that are run by the league for the thirty-two member

franchises."  *Id.* at 14:8-12.  Mr. Grubman referred to NFL Ventures as an affiliate or

subsidiary of the NFL.  *Id.* at 15:5-12.  Furthermore, according to its 2010 Independent

Auditors' Report, NFL Ventures earned revenues for providing hospitality for the Super

Bowl, despite the fact that the NFL "League Office" reported no Super Bowl-related

revenue.  Pl. Ex. 4.  In 2010, NFL Ventures accounted for approximately $1.8 billion of

the NFL's $8 billion in revenue.  *Id.* at 3, 7.

Under Texas law, "a party generally must be a party to a contract before it can be

held liable for a breach of the contract."  *Hoffman v. AmericaHomeKey, Inc.*, 23 F. Supp.

3d 734, 739 (N.D. Tex. 2014) (citing *Ostrovitz & Gwinn, LLC v. First Specialty Ins. Co.*,

393 S.W.3d 379, 387 (Tex. App.—Dallas 2012, no pet.)).  Here, as this Court has twice

held, the Super XLV tickets were contracts between the NFL and the ticketholders.  *See*

*Simms v. Jones*, 879 F. Supp. 2d 595, 599 (N.D. Tex. 2012) ("Plaintiffs' breach of

contract claim arises out of the purchase by Plaintiffs of a Super Bowl game ticket. That

ticket, however, is a contract only between the NFL and a ticket purchaser (or a

purchaser's assignee.")).  In *Ibe*, this Court held that Plaintiffs failed to state a breach of

contract claim against the Dallas Cowboys Defendants, finding that the Dallas Cowboys'

resale of the tickets did not alter the ticket contract's fundamental nature as a contract

between the NFL and ticketholder.  *Id.*  This Court held the same in this case.  *See Greco*

*v. Jones*, 38 F. Supp. 3d 790, 793 (N.D. Tex. 2014) ("As was the case in *Simms*,

Plaintiffs' breach of contract claims arise out of the purchase of a game ticket for the

2011 Super Bowl. That ticket, however, is a contract only between the NFL and a ticket

purchaser (or a purchaser's assignee).").  Plaintiffs have not asserted a basis for this Court

to conclude that NFL Ventures is a party to the ticket contract, potentially because

Plaintiffs do not segregate their allegations against NFL Ventures, L.P. or NFL Ventures,

Inc. from their allegations against the NFL or the NFL team owners.  *See In re*

*Parkcentral Global Litig.*, No. 3:09-CV-0765-M, 2010 WL 3119403, at *3 (N.D. Tex.

Aug. 5, 2010) (Lynn, J.) ("It is impermissible to make general allegations that lump all

defendants together; rather, the complaint must segregate the alleged wrongdoing of one

from another.") (citation omitted).

### ii.  NFL Team Owners

Plaintiffs argue that the NFL is composed of "members," with each "member

being an owner of a professional football club located in the United States."  Pl. Ex. 1

(Constitution and Bylaws, Art. 2.1(A)).  Thus, Plaintiffs claim that the NFL corporate and

individual owners of the teams are subject to liability for the Super Bowl XLV tickets by

virtue of their membership in the NFL.

The NFL advances two arguments in support of its assertion that the NFL teams

and owners cannot be liable.  First, the NFL argues that, under Texas common law,

members of unincorporated associations cannot be held liable for the acts of an

association merely because they are members of that association.  Second, the NFL states

that, since the NFL is a nonprofit unincorporated association, its members are protected

by the Texas Uniform Unincorporated Nonprofit Associations Act ("TUUNAA").

The NFL represents itself as an unincorporated association, and courts generally

recognize it as such.  *See e.g., American Needle, Inc. v. National Football League*, 560

U.S. 183, 187 (2010) (defining the NFL as "an unincorporated association of 32

separately owned professional football teams").  Accordingly, the NFL contends that,

under Texas law, members of unincorporated associations can only be liable for the

illegal acts of the association if the members actually carried out, ratified, or authorized

the acts.[9]  *Juhl v. Airington*, 936 S.W.2d 640, 643 (Tex. 1996); *see also Cox v. Thee

Evergreen Church*, 836 S.W.2d 167, 174 (Tex. 1992) (Cook, J., concurring) ("[T]he

individual liability of a member will be based on their actual participation in the tort or

---

[9] It is important to note that TUUNAA has abrogated this older version of common-law
liability.  *MT Falkin Investments v. Chislom Trail Elks Lodge No. 2659*, 400 S.W.3d 658,
667 (Tex. App.—Austin 2013 pet. denied). "Although both TUUNAA and the common-
law state that a member of a nonprofit association is not liable for the association's
contracts merely because he is a member," the common law still attached liability to
members who expressly or tacitly ratified the actions of the association. *Id.* at 665. In
contrast, TUUNAA eliminated all forms of vicarious liability.  *Id.* at 666.  As a result, an
individual cannot be liable for the actions of the association "merely because the person
is a member, is authorized to participate in the management of the affairs of the nonprofit
association, or is a person considered as a member by the nonprofit association." Tex.
Bus. Orgs. § 252.006(b).

ratification of the actions which cause injury.").  Additionally, the United States Supreme Court has held that, "for liability to be imposed by reason of association alone, it is necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims."  *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 920 (1982).  In this case, the NFL argues that the member teams had no involvement in making the Super Bowl ticket contract, and therefore, cannot be held individually liable.

When Texas courts reference "unincorporated associations" in the context of member liability, they specifically refer to unincorporated nonprofit associations.  In the seminal case, *Cox v. Thee Evergreen Church*, the court clearly distinguished an "unincorporated charitable association" from "unincorporated associations organized or conducted for business or profit."  836 S.W.2d at 169 n. 1.  In *Cox*, the Texas Supreme Court concluded that members of unincorporated charitable associations were shielded from liability, but it did not discuss for-profit associations.  *Id.* at 173.  Each of the cases cited by the NFL that address members' limited liability involves a nonprofit association. *See, e.g.*, *id.* at 169 n. 1 (defining church group as unincorporated association); *Juhl*, 936 S.W.2d at 642 (considering whether a group of abortion protesters was sufficiently organized to be an unincorporated nonprofit); *see also Waddill v. Phi Gamma Delta Fraternity Lambda Tau Chapter Texas Tech University*, 114 S.W.3d 136, 142 (Tex. App.—Austin 2003, no pet.) (considering liability of fraternity for actions of two members).

Under Texas law, for-profit unincorporated associations are distinct from nonprofit unincorporated associations.  For-profit unincorporated associations are

25

designed to directly funnel money to businesses or to increase overall revenues by promoting trade. *See Wells v. Mackay Tel.-Cable Co.*, 239 S.W. 1001, 1007 (Tex. Civ. App.—Galveston 1921, no writ) (categorizing a trust as for-profit because its purpose was "the buying, selling, and development of oil lands and the refining of oil"); *Golden v. Wilder*, 4 S.W.2d 140, 142 (Tex. Civ. App.—Fort Worth 1928, no writ) (defining a neighborhood association building a telephone line as for-profit because the line was "a commercial venture for profit in the way of expected increase of trade"). In contrast, a nonprofit association is "an unincorporated organization, other than one created by a trust, consisting of three or more members joined by mutual consent for a common, nonprofit purpose." Tex. Bus. Orgs. § 252.001(2);[10] *see Edberg v. Laurel Canyon Ranch Architectural Review Comm.*, 04-08-00290-CV, 2009 WL 1089432, at *2 (Tex. App.—San Antonio Apr. 22, 2009, no pet.) (holding that architectural review committee that "has no revenues, has not made a profit, and does not compensate its members" was a nonprofit under TUUNAA); *Izen v. Sjostrom*, 14-06-00142-CV, 2007 WL 968841, at *3 (Tex. App.—Houston [14th Dist.] Apr. 3, 2007, no pet) (concluding that a fund designed to pool investors' money to pay their lawyer was a nonprofit under TUUNAA). In *MT*

---

[10] Texas applies TUUNAA to determine whether a member of an unincorporated nonprofit association can incur liability for the actions of the association. *MT Falkin*, 400 S.W.3d at 667 (holding that TUUNAA "abrogated the common law" standards for imposing member liability). Before the enactment of TUUNAA, "unincorporated charitable associations" were defined as "those associations organized and operated for charitable, religious, recreational or educational purposes, as well as any other bona fide nonprofit association organized and operated for the promotion of social welfare by being primarily engaged in the common good and the general welfare of people in a community." *Cox*, 836 S.W.2d at 169 n. 1. However, recent decisions have turned to TUUNAA to define unincorporated nonprofit associations. *See Izen,* 2007 WL 968841, at *3; *Edberg*, 2009 WL 1089432, at *2. To the extent there are differences between the common law definition and the statutory definition, those differences do not impact the Court's analysis of the NFL's organizational form.

*Falkin Investments v. Chislom Trail Elks Lodge No. 2659*, the court held that a revenue-pooling bingo association qualified as a nonprofit because the association "presumably distribute[d] proceeds from its charitable bingo operations to its members—all of which are nonprofit organizations with a charitable purpose." 400 S.W.3d 658, 663 (Tex. App.—Austin 2013 pet. denied).

Accordingly, "[u]nincorporated associations organized for profit or to conduct a business" are governed "under the principles of partnership law." *Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1285 (5th Cir. 1994); *see Thompson v. Schmitt*, 115 Tex. 53, 66-67, 274 S.W. 554, 559 (1925) ("If the association is formed for conducting business for the purpose of profit, it is a partnership and the liability of the individual members upon the debts incurred or contracts made on behalf of the association by officers or individual members is governed by the law of partnership.") (citation omitted); *Burton v. Grand Rapids Sch. Furniture Co.,* 31 S.W. 91, 92 (1895, no writ) (same).  In Texas, a partnership is "an association of two or more persons to carry on a business for profit as owners," and partners may be held jointly and severally liable for "all obligations of the partnership unless otherwise agreed by the claimant or provided by law."  Tex. Bus. Orgs. §§ 152.051(b), 152.304(a)(1)-(a)(2).

The NFL's Vice President, Eric Grubman, has categorized the NFL's structure as "more like a partnership."  Pl. Ex. 2.  However, the NFL's bylaws state that "the League is not organized nor to be operated for profit."  Pl. Ex. 1, Pl. App. 8.  In addition, the NFL is apparently tax-exempt under Internal Revenue Code § 501(c)(6) because it is a nonprofit that operates for the mutual benefit of its members. Jami A. Maul, *America's*

*Favorite "Nonprofits": Taxation of the National Football League and Sports Organizations*, 80 UMKC L. Rev. 199, 218–19 (2011).

According to the foregoing cases and the limited evidence before the Court, the NFL resembles a for-profit unincorporated association.  Unlike the bingo association in *MT Falkin*, the NFL distributes its money to the thirty-two member teams, and each NFL team is a for-profit business.  *American Needle, Inc.*, 560 U.S. at 196 (describing each NFL team as a "substantial, independently owned, and independently managed business").  While the bingo association organized around the "common, nonprofit purpose" of funding individual charities, the NFL is meant to "promote and foster the primary *business* of the League members."(emphasis added).  *See* Pl. Ex. 1. Furthermore, Eric Grubman, the NFL's Executive Vice President, described the NFL as a "trade association" that looks "more like a partnership than it is an incorporated entity" or a "charitable organization."  *See* Pl. Ex. 2.  These comments conform to common sense— the NFL, in reality, operates to funnel revenue to individual teams, which are run as for-profit businesses.  However, even if the Court were conclude that the NFL was a for-profit unincorporated association, and partnership law applicable, Plaintiffs need not join each owner in order for those teams to be jointly and severally liable.  *See Evanston Ins. Co. v. Dillard Dep't Stores, Inc.*, 602 F.3d 610, 618 (5th Cir. 2010) (citing *In re Jones*, 161 B.R. 180, 184 (Bankr. N.D. Tex. 1993)).

However, in the Court's view, the issue of individual owner liability is not sufficiently pled to decide if TUUNNA protects the NFL team owners.  Accordingly, the Court **DENIES without prejudice** Plaintiffs' Motion for Leave to File First Amended Complaint.  Plaintiffs may move again for leave to amend their Complaint after the stay

is lifted, and if they do so, Plaintiffs shall properly segregate their allegations against NFL Ventures, L.P. and NFL Ventures, Inc., and plead facts that show the owners of the NFL teams are liable as members of the NFL because of the NFL's status as a for-profit unincorporated association under Texas law.

## MOTION TO STAY PENDING APPEAL

Plaintiffs move to stay this case pending resolution of the appeal filed in *Ibe*, a related case with nearly identical factual and legal issues.  Plaintiffs argue that staying this case will save resources and time for the Court and parties.  In the *Ibe* matter, Plaintiffs have appealed many of the Court's legal rulings, including denial of class certification, dismissal of the Cowboys Defendants, the Court's interpretation of the ticket contract, and dismissal of Plaintiffs' DTPA claims, among other rulings.  *See* Dkt. No. 177 at 3.

This Court has the power to stay proceedings pending appeal, as "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 166, 81 L. Ed. 153 (1936).  A court is within its discretion to grant a stay when a related case with substantially similar issues is pending before a court of appeals.  *See Trinity Indus., Inc. v. 188 L.L.C.*, No. CIV. 3:02-CV-405-H, 2002 WL 1315743, at *3 (N.D. Tex. June 13, 2002) (Sanders, J.).  However, in determining whether a stay is proper, courts consider the interests of the parties and potential conservation of judicial resources. *Landis*, 299 U.S. at 254–55.

The NFL opposes the entry of a stay, arguing that each of the legal issues being appealed by Plaintiffs in the *Ibe* case is likely to be affirmed by the Fifth Circuit, which would make a stay unwarranted. The NFL contends that the most likely outcome is that the *Ibe* case will minimally impact the posture of this case, and if a stay were granted, the evidence, including witness memory, would become stale. The NFL also argues that Plaintiffs pressed for an aggressive schedule in this matter, including opposing early motions for summary judgment and accusing the NFL of dragging its feet to delay the first bellwether trial, and that it was only recently, when the *Ibe* matter resulted in an unfavorable outcome for Plaintiffs, that they sought to stay the case. *See* Dkt. No. 182, Def. Ex. A-B.

Here, the Court finds that the interests of the parties, and appropriate conservation of judicial resources, weigh in favor of granting a stay. The issues in the *Ibe* case will very likely bear on this case. Unlike *Ibe*, this case involves nearly 200 Plaintiffs, and will proceed with time-consuming bellwether trials, the logistics and schedule for which will be complex. Should the Fifth Circuit reverse any of this Court's significant rulings in *Ibe*, it would potentially necessitate a retrial of any bellwether trials conducted during the pendency of the *Ibe* appeal. Moreover, the parties have previously recognized the value of the *Ibe* case as a bellwether trial for this matter. *See* Dkt. No. 182, Def. Ex. B, Def. App. 5. The final outcome of *Ibe* will likely streamline issues for dispositive motions and bellwether trials in this case. *Id.* The risk of duplicative litigation is too great for this Court to ignore. Thus, Plaintiffs' Motion for a Stay is **GRANTED**, except for the agreed motion to join four additional plaintiffs.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Partial Judgment on the Pleadings is **GRANTED**, Plaintiffs' Motion for Leave to File First Amended Complaint is **DENIED without prejudice**, and Plaintiffs' Motion for Stay Pending Resolution of the Appeal of the Related-*Ibe* Matter is **GRANTED**.  This case is **STAYED**, except for the filing of an agreed motion to join Paul Ober, Mohit Goyal, Marie Pace, and Patricia Jones as Plaintiffs.

**SO ORDERED.**

July 21, 2015.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**